(Name)       JAMES MORRIS JACKSON

(Address)    New Folsom
             SACRAMENTO

(City, State, Zip)   P.O BOX 290066
                     RepresA CA, 95671

(CDC Inmate No.)   P-23919

2354     1983

FILING FEE PAID

Yes ____   No ✓

IFP MOTION FILED

Yes ✓   No ____

CONSENT TO

Court ✓   ProSe

**FILED**

AUG 1 3 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ✓       DEPUTY

# United States District Court
## Southern District of California

(Enter full name of plaintiff in this action.)

JAMES MORRIS JACKSON   Plaintiff,

v.

Stephen E. Kight
(Enter full name of each defendant in this action.)

Defendant(s).

'08 CV 1484 H BLM

Civil Case No. _____
(To be supplied by Court Clerk)

Complaint Under the
Civil Rights Act
42 U.S.C. § 1983

**A. Jurisdiction**

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.

**B. Parties**

JAMES MORRIS JACKSON

1. <u>Plaintiff</u>: This complaint alleges that the civil rights of Plaintiff,

SACRAMENTO                                    (print Plaintiff's name)
New Folsom P.O BOX 290066 , who presently resides at
RepresA CA, 95671                            (mailing address or place of confinement)
                                             , were violated by the actions
of the below named individuals. The actions were directed against Plaintiff at

                    on (dates)              , and
(institution/place where violation occurred) iN CouRT SAN DiEGO (Count 1)   (Count 2)   (Count 3)

2. <u>Defendants</u>: (Attach same information on additional pages if you are naming more than 4 defendants.)

Stephen E. KNight AHorney

§ 1983 SD Form
(Rev. 5/98)                                  ::ODMA\PCDOCS\WORDPERFECT\22834\1

Defendant _Stephen E. Kight_   2232 Fifth Avenue
(name)   SANDIEGO CA, 92101,
(FAX) 231-04IN (888) 760-2827   (County of residence)
and is employed as a _Attorney (619) 696-1107_   This defendant is sued in
(defendant's position/title (if any))   Attorney 2 million
his/her [X] individual [ ] official capacity. (Check one or both.)  Explain how this defendant was acting
under color of law: Malpractice suit Ineffective Assistance
of counsel Attorney Relied on court Ex Attorney Report on
prostute Background he didn't not Investagate her in person.
Railroaded plaintiff into sign plea Agreement. the prostuter did not
have any evidence against plaintiff.

Defendant _____   resides in _____
(name)   Seeking compensatory and (County of residence)  SANDIEGO
and is employed as a   punitive damages   This defendant is sued in
(defendant's position/title (if any))   Attorney
(his)/her [ ] individual [ ] official capacity. (Check one or both.)  Explain how this defendant was acting
under color of law:

Defendant _Charles N. Guthrie_   444 W. "C" street suite 140
(name)   SANDIEGO CA, 92101
and is employed as a _Attorney (619) 233-8044_ (County of residence)   This defendant is sued in
(FAX) 233-8550
(defendant's position/title (if any))
his/her [X] individual [ ] official capacity. (Check one or both.)  Explain how this defendant was acting   Not Sueing
under color of law: I Fiend Charles N. Guthrie because he
Keep telling me I was going to get 25 to Life. he did
investagate prostute's Background he did my plemnary hearing.
I hope to have him supoena. 2220 Fifth Ave sute 101
Defendant _Regina D Steel_   resides in   SANDIEGO CA, 92101-2118
(name)   (619) 696-3805 (County of residence)
and is employed as a _Attorney_ Email rsteel 13 ad.com   This defendant is sued in
(defendant's position/title (if any))   Not Sueing
his/her [ ] individual [ ] official capacity. (Check one or both.)  Explain how this defendant was acting
under color of law: Stephen E. Kight on two Acanstions
Did not show up for court apairous. Law Offices
of Regina D Steel Represented me on time because
Attorney Stephen Kight didn't show up. she will testify
to that. Also Stephen Kight hived a Attorney to
Represent me and Later I found out he didn't have
a License he pratice Law. he tried to get me to sign
for 4 years plea Agreement and a Drug program in prison.
he was a white male I never since him anymore.
Sffephen Kight Relied on the DA's Report and Charles N.
Guthrie's plemnary Report and he did the Foot work for the
case. I knew I could Jewon my case No. SCD 136393

**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

Count 1:  The following civil right has been violated:

Ineffective Assistance of counsel (E.g., right to medical care, access to courts, malpractice suite

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts:  [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

Stephen E. Knight he Failed to take case to trail the case was week, he said I could've got in two hung Jory's But the DA was going to try me three times. they offor me three Deals 4 years 9 years 12 years 17 years the 4 years twas with a 5 year enhancement. The Judge Did not want to dismiss case, I will if the case went to Trail I would've been Found Not guity on the Assult charges and on misdaminer charges Found Guity picking up a prostute, Battery soociting prostition I should be Allowed to take ple Back because the court Brech the plea Agreament By give me A 5 year in enhancement 9 mouths Later while at Donovan state Prison From 12 years to 17 years, they used my prior Record to enhance me 667(A) The Judge Denide Request to get a psychiatric evaluation A Patton state Hospital, Steven Kight Failed to Fail A 995 motion to Dismiss case, he keep telling me and my mother that I was going to get 25 to Life if I go to Hal and Lose. Plus I was under the infuse of Mellaril A pych Drug when I sign For the 12 years. he Did not try to Dimiss the enhance ment prior, I did not have sex with the prostute, the prostute was on Drugs at the pleminary hearing. Also probation Report that I should serve A term of twetve years I'm sending A copy to court of the Report, Attorney gave up on his clin te Plaintiff. the Attorney Just let the DA Do what ever he want3d and the Judge

§ 1983 SD Form (Rev. 5/98)                                                                C:\DMA\CDOCS\WORDPERFECT\22834\1

Count 2: The following civil right has been violated: Due process Ineffective Assistance

2 million Malpractice suit, counsel

(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

seeking him to be Bared From pracTing LAW. to pAy 2 millon

Supporting Facts: [Include all facts you consider important to Count 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, by name, did to violate the right alleged in Count 2.]

2 million MAlpractice suit AgAINST STeben E. Kight AttorNey seeking compensAtory AND putive damages. IN effective Assistance of counseL, FAiL to INvestigate prostute in person to BAck geouND Reiled oN CHARLes N. Guthrie plemiary Report Also his investigation Report of prostute she was oN probation For drugs prostution AND hAs A prior FOR GTA steLing cArs iN FLordia wAs iN prison For that her NAme is TRINA Dykes street prostitute. I KNow that DA case SCD136393 wAs week. they did Not WANT to go TRiAL. The Attorney Steben Kight WAS WORKING AND helping the D.A, AND JUDGE michAel D. Willington iN SANDiego Superior court DepartmenT 8. My mother paid Steben Kight to Repent me iN court, I got his NAme ADDress out of SANDiego News pAper. his A member of AmericAN BAR Assoc. SANDiego couNTy BAR Assoc. The Deputy District AttorNey wAs ALBerT BArret Esq AND DaNiel LAmborn. Plus AttorNey Steben Kight hired A AttorNey to Represt me he didN't hAve A Licence to prAtice LAW. he tryed to get me 4 yeArs oN A pleA Agreement. he wAs A white mAle. he DID-Not File motion to Dismiss the Assolt charges. he told me I hAD A 50.50 chance being FouND Not Guilty. by A JURY TRiAL. I told him we could wiN the cAse. But he DiDN't File motions to sPrese my prior RecorD. he sAiD the D.A wAs goiNg to use my ex wifes to testify AgAiNst me. AND IF I testify the DA wAs goiNg to use my prior RecorD AgAiNst me.

Count 3: The following civil right has been violated: INeffective AssistANce of counsel. he FAiled to BeiNg cAse to

(E.g., right to medical care, access to courts,

my due process he wAs I TRIAL. he ReliED oN my ex AttorNeys Files.

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 3. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.] The JUDGE WAS Bays Agaist me, Stephen Knight WAS WORKING Agaist me he Felt my FAMily WASNT giving him enoghte money on my case AND I will that the Reason he RAilRoaded me to sign to a plea agreement. AND I should be able to take Back my plea Agreement Because couRt BReach the plea agreement. Buy giving me 5 moRe years on my 12 year sentence. AND that I should Be Allowed to take Back plea agreement AND go to TRiAL. Stephen Knight DID not hiring A investagtoR to Look into prostitutes Back ground. The DA gave her Amunaty Agaist me to prostute me in couRt. I WAS on probation FoR Demistic Violance AND the prostitute WAS on probation FoR DRugs AND prostitution. Stephen Kight FAIL to Represent my AND to show up on couRt Dates. he would have other Attorneys Like RegiNA D, steele to File in FoR him. IF supoeNA she will testify to that. plus he hire A white mAle Attorney with no License to Represent me in couRt. I will testify to that. Also Stephen E. Kight, Reiled on my ex Attorneys that I FiReD on his Files Records AND DiDint investagated him self into Back gound of prostitute. Plos I have A mental illness since 1994 Record go Back to 1994.

**D. Previous Lawsuits and Administrative Relief** mediial Records.

1. Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case? ☐ Yes ☒ No. I've NeveR FAiLeD A LAw suite Agaist A Attorney.

If your answer is "Yes", describe each suit in the space below.  [If more than one, attach additional pages providing the same information as below.]

(a)  Parties to the previous lawsuit:

Plaintiffs: _____

Defendants: _____ N/A _____

(b)  Name of the court and docket number: _____

_____

(c)  Disposition: [ For example, was the case dismissed, appealed, or still pending?] Yes 602
ON OFFICERS ON N/A A civil case

(d)  Issues raised: being pepper sprayed
No CV-0466-RE excessive Force
First Amended complaint Filed 2006
exhursted aminstrative Reminders Log No LAC
06-04015 James morris Jackson V Palacios etal

(e)  Approximate date case was filed: _____ 2006 _____

(f)  Approximate date of disposition: _____ case still pending
Only in State Prison hearing Date 8-14-2008,

2.  Have you previously sought and exhausted all forms of informal or formal relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDC Inmate/Parolee Appeal Form 602, etc.] ? ☐ Yes ☒ No. Because Im suiting my privite Attorney For In effective of counsel.

If your answer is "Yes", briefly describe how relief was sought and the results.  If your answer is "No", briefly explain why administrative relief was not sought.

Because this case No 136393 WAS in 1998
SCD
Department 8 Sandiego Superior court
October 6,1998 time 12:05pm
And Because Attorney didn't Represent
Plaintiff Right Because the Lawlibary
Staff to told me if you File Agaist
you Attorney you Did not have to
File Administrative Relief,

**E. Request for Relief** *To have court grant Plaintiff to
Apocnteg New Attorney on my case*

Plaintiff requests that this Court grant the following relief: *For Trial or for
Sentence Motafy*

    1. An injunction preventing defendant(s):

*And to grant Plaintiff 2 million in Damage
punitive damages 50,000 thousand and
compensatory Damages 10,000 thousand.*

    2. Damages in the sum of $ *2 million*

    3. Punitive damages in the sum of $ *50,000 thousand Fifty*

    4. Other: *Seeking compensatory 10,000 thousand
that he's License Revote that A New Attorney
Be Asigned to my case and to
Relook At my case For
Reversol.*

**F. Demand for Jury Trial**

    Plaintiff demands a trial by ☑ Jury ☐ Court. (Choose one.)

**G. Consent to Magistrate Judge Jurisdiction**

    In order to insure the just, speedy and inexpensive determination of Section 1983 Prisoner cases filed in this district, the Court has adopted a case assignment involving direct assignment of these cases to magistrate judges to conduct all proceedings including jury or bench trial and the entry of final judgment on consent of all the parties under 28 U.S.C. § 636(c), thus waiving the right to proceed before a district judge. The parties are free to withhold consent without adverse substantive consequences.

    The Court encourages parties to utilize this efficient and expeditious program for case resolution due to the trial judge quality of the magistrate judges and to maximize access to the court system in a district where the criminal case loads severely limits the availability of the district judges for trial of civil cases. Consent to a magistrate judge will likely result in an earlier trial date. If you request that a district judge be designated to decide dispositive motions and try your case, a magistrate judge will nevertheless hear and decide all non-dispositive motions and will hear and issue a recommendation to the district judge as to all dispositive motions.

    You may consent to have a magistrate judge conduct any and all further proceedings in this case, including trial, and the entry of final judgment by indicating your consent below.

Choose only one of the following:

☐ Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

☒ Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

    I declare under the penalty of perjury that the foregoing is true and correct.

*8-10-2008*
_____
Date

*James Morris Jackso*
_____
Signature of Plaintiff

PETITION FOR REVIEW

~~IN THE SUPREME COURT OF THE~~

~~STATE OF CALIFORNIA~~

COPY

United States District Court

Southern District of California

United States District Court
Southern District

~~THE PEOPLE OF THE STATE~~

OF CALIFORNIA, WARDEN WALKER

PLAINTIFF and RESPONDENT

VS.

~~JAMES JACKSON~~
DEFEDENT and APPELLANT.

NO. D032628

PETITION FOR REVIEW


COPY

1  or settlement of an important questions of law.

2

3               STATEMENT OF THE CASE AND FACTS

4  The distilation set forth in the court of appeals opinion are correct with the

5  acception of the question this petitoner raises in this petiton.

6

7                 I. ARGUMENT

8  This petitioner reincorporates by reference all of the "salient" questions he

9  has raised in this petition and adds,the Supreme Court recognizes plea bargaining

10  as an essential component of the criminal justice system see Santobello v.New

11  York,404 U.S. 257,260(1970).,and the Constitution requires a prosecutor to comply

12  with equal protection requirements in conducting plea bargaining see U.S. V.

13  REDONDO-LEMOS,955F.2d 1296,1301-03(9 th cir.1992),This petitioner states that

14  it is abudantly clear that the prosecution breached its plea agreement when

15  this petitioner understanding was that he would be sentenced to 12 years,based

16  on information and belief a petitioner who alieges that the prosecution breached

17  its agreement is entitled to an evidentiary hearing or,in the court's discretion,d

18  or expansion of the record. see U.S. V. JONES,58 F.3d 688( D.C. Cir.1995),if

19  a Federal Court finds that state prosecutors have breached a plea-agreement

20  it should remand the case so that a state Court can devise the proper remedy.This

21  petitioner states that his defense cousel failed to advise him that he could

22  have stipula ted to a prison prior under 667.5(b),which would have been a lesser

23  included offense than a serious -violent prior and moved to have the serious

24  violent prior struck.The sixth amendment guarantees the right to effective

25  assistance of counsel in criminal prosecutions.Again this petitioners counsel

26  failed to adequately bring out the fact of this petitioners mental ilness and

27  thusthe counsel performence fell well below and objective standard of

28  resonableness.



II. ARGUMENT

This Petitioner states that Rule 11(e) of the FEDERAL Rules of Criminal Procedure governs the conduct of the goverment and the defendant see Fed.R.Crim.P. 11(e)(1) see U.S. V.Adams,634 F.2d. 830-42(5th cir.1981),In such an agreement the prosecutor may move for dissmissal of the other charges,make a non-biding sentencing recommendation to the court,agree not to oppose the defendant's request for a particular sentence,or agree that a specific sentence is appropriate for the disposition of the case...This Petitioner states that based on information and belief a defendant admits all elements of the charged crime when they enter a guilty plea,because many rights are waived constituinally by pleading guilty, however the plea must be entered "knowingly and "voluntarily" from competent counsel see BOYKIN V. ALABAMA,395 U.S. 238,243-44(1969)..The court must also ensure that the defendant is competent to enter a guilty plea.In making this determination,a court must consider: 1) whether the defendant "has sufficient present ablity to consult with his lawyer with a reasonable degree of rational understanding",and 2) "whether he has a rational as well as factual understanding of the proceedings against him" U.S. V.PARRA-IBANEZ,936 F. 2d 588,596(1st Cir.1991 This Petitoners attorney and the for examplE ON THE CHANGE OF PLEA RT( pg-11n-16)" THE COURT:HAVE YOU HAD ANY DRUGS OR ALCOHOL IN THE LAST 24 HOURS? THE DEFENDANT:MELARIL...When this defedant acknowledged that he had prescription drugs within the last 24 hours the court shuld have made an active inquiry into his competency. THIS PETITIONER STATES THAT ALL DOCUMENTS INDICATE THAT HE WAS DEPRIVED OF ALL FUNDAMENTAL FAIRNESS AND DUE PROCESS THE TRIAL COURT WAS BOUND SUE SPONTE BASED ON THE PSYCHIATRIC EVALUATIONS AND REPORT SEE EXHIBITS AND DOCUMENTS.SEE TILLER V.EPOSITO,937 F.2d. 160,162(5th Cir.1991).This petitioner prior violent felony conviction was used to enhance him was done so illegally and without this petitoners understanding.

## III. . CONCLUSION

1  FOR THE REASONS STATED, THIS PETITION FOR REVIEW SHOULD BE

2  GRANTED, AND THIS CAUSE SHOULD BE SET FOR ARGUMENT.

3  DATED: 5-11-2008

   6-10-2008

                                    RESPECTFULLY SUBMITTED,

4                                   /S/ James Jackson

5                                   JAMES JACKSON, P-23919

6                                        IN PRO PER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COPY

# ATTACHMENT

( Probation Report )

RE: JACKSON, JAMES                    -7-                     October 21, 1998

rational.

## 12 MEDICAL FINDINGS:

12.1  James Jackson does suffer from a mental disorder, mainly a substance dependence disorder.

12.2  In spite of his mental disorder, he does understand the nature of the criminal proceedings.

12.3  In spite of his mental disorder, he is able to assist counsel.

12.4  In spite of his mental disorder, he is able to generate a rational defense.

## 13 CONCLUSIONS:

Based on the above aforementioned medical findings, the court may conclude that James Jackson is competent to stand trial. If the court wishes to have psychiatric in put into "specialized sentencing," please arrange for this defendant to come back for a second interview, and explain to us what "specialized sentencing" is.

ANSAR HAROUN, M.D.
SUPERVISING FORENSIC PSYCHIATRIST

AH /TL191  7576
D:10/21/98
T:10/21/98



9.14    He understands legal procedures, and could discuss bail, telling me that it was $25.000 and then was raised to $50,000, then it was revoked because of his probation hold. He told me his bail was not revoked because of his recent possible escape attempt. I also discussed with him his plea bargaining. He said that he would consider a deal, and would plead to get the lowest term, if he could get psychiatric help, because he says that counselling helps him.

9.15    He understands the possible pleas and outcomes. He told me that he was not sure how he would plead, but would talk to his attorney, but would probably plead guilty if he got a sentence of less than two years, but if it is more than two years, then he would "take it to a jury trial." He believes that if he is found guilty, he can get a maximum of 17 years. If he is not found guilty, he believes that he can "go home, go to AA and go to anger management."

9.16    He understands the charges, telling me that "a white female prostitute said that I forced her to have oral sex...went out to El Cajon Blvd....in early 1998....and then took her by forced imprisonment, because she got into my car!"

## 10. IS THE DEFENDANT ABLE TO ASSIST COUNSEL?

10.1    Behaviorally, the defendant came to the interview without any coercion, and displayed an alert level of consciousness throughout the interview, although occasionally he closed his eyes as if he was sleeping.

10.2    Socially, he did observe all the rules of convention of social intercourse, was polite, and shook my hand when he departed. I had expected someone who was potentially violent, but he was quite calm throughout the interview.

10.3    Psychologically, he demonstrated that he could hear my questions, pay attention to them, understand them, process them, reflect upon them, and responded intelligently. He demonstrated good decision making actuality. He is motivated to win his case. He has the capacity to protect his self interest.

## 11. IS THE DEFENDANT DEFENSE RATIONAL?:

11.1    He told me that his defense would be:

"I pushed her out of the car, but her bruises were old...she had mace and a glass pipe, so if she felt threatened, she could have sprayed me and stabbed me.. anyway, she was high on drugs...she got mad, because she wanted my $20.00." Analysis of this shows that it is all

COPY

RE: JACKSON, JAMES                    -5-                    October 21, 1998

thinking, or in the quality or quantity of his thinking.

Examination of communication revealed that he could and did speak efficiently.

### 8 3   Psychiatric Diagnosis:

| | |
|---|---|
| Axis I. | 304.80, Polysubstance Dependence Including alcohol, cannabis, and Cocaine. |
| Axis II. | Deferred. |
| Axis III. | No health problems noted. |
| Axis IV. | Problems Related to Interaction With Legal System. |
| Axis V. | Current Global Assessment of Functioning: 65. |

### 8.4   Psychiatric Prognosis:

This man does not suffer from any severe mental illness other than he is recovering from polysubstance abuse. The prognosis for this is good as long as he abstains from substances. His mental state is likely to improve as his brain gradually recovers from the effects of drugs. He reports that he is hallucinating, although I did not observe him to hallucinate. His report may be true or false. If it is true, it may be helped by the antipsychotic medication that he is taking.

### 8.5   Psychiatric Findings:

James Jackson does suffer from a mental disorder, which is polysubstance dependence.

## 9.   IS THE DEFENDANT ABLE TO UNDERSTAND THE NATURE OF THE CRIMINAL PROCEEDINGS?

9.11   He understands his current legal situation, telling me that he is in a George Baley Jail in tank 6. He identified his attorney as "Steven Knight...a private attorney....my family hired him."

9.12   He understands the concept of his rights and told me that he had a right to an attorney and the right to remain silent and discussed these intelligently.

9:13   He understands the roles of the various court officials. He wants his defense attorney to "get me to the hospital." He believes that the DA is trying to "hang me...he does not like me....he is overdoing it." He believes that the judge and the jury would have to "decide what to do with me." He would prefer to have a jury trial, because he thinks that they would better "look at when I was younger...nobody is perfect."

OCT 26 '99 08:59AM

RE: JACKSON, JAMES                    -4-    ([COPY        October 21, 1998

He says that he has never been hospitalized in a psychiatric hospital and has only had a few contacts with psychiatry, the last formal evaluation being with the state disability psychiatrist in 1997. He says that he recently consulted a jail psychiatrist, because he was having problems with "dreams, voices, nightmares, and feeling paranoid." He was started on Mellaril, which is an antipsychotic edication. There appears to be an absence of consistent or chronic mental illness.

8.18   Substance Misuse:

He reports that he has heavily abused alcohol, Cocaine and cannabis, and last used at the time of his arrest.

8.2   Examination of Mental State:

Neurobehaviorally, he presents as a 5'9", 220 lb, right handed, fair skinned African-American male. He has tattoos on both his right and left arms. Socially, he is friendly, cooperative and attentive. Emotionally, he said that he is feeling calm, but also said "I feel that I want to hurt somebody...I have an anger problem." He did not display any extreme disturbance of emotions during the interview, but I did have a note from the Marshals, telling me "Mr. Jackson has been violent recently towards law enforcement,"suggesting that he may, indeed, have some anger problems.

Perceptually, I did not observe him to hallucinate, but he reports that he is hearing and seeing things all the time.

Cognitively, he appeared intact and was able to pay attention to all my questions, was not confused, but rather oriented, correctly identifying the month, year, city, state, and the president. He did identify the city as "Dago" as opposed to San Diego, and he was mildly confused as to the year being 1997 or 1998. Intellectually, he showed that he could read, says that he can write well, showed that he could add and subtract, and showed that he could spell a word forwards without error, and backwards with minor errors. He could discuss current events in only a vague way, referring to "shootings and killings."

Examination of thinking revealed no abnormalities in the content of his thinking. He is not delusional or referential. There is, however, a fearful flavor to his thinking and even though he says that he is paranoid, I don't believe that he is actually paranoid but I think rather he is scared of being brutalized by the police. There is no abnormality in the organization of his



is a cashier while the father is retired from the Navy. He states he has no brothers, but he says he has three younger sisters.

8.12   School History:

The defendant reports academically attending special classes for having problems with reading and arithmetic. He went up to the 11th grade and hopes that he will get his GED in the future. He relates that he was badly behaved, was kicked out of school, and was transferred to a continuation school. Socially he reports that he was different from other children, because of his problems with math and English, and because he got involved with drugs.

8.13   Work History:

The defendant reports that he usually works as a house painter. The longest job he had was with the Navy where he was a Civil Service Employee for about three years, for 1987-1990. He says that he was working at the time of his arrest.

8.14   Socio-cultural History:

The defendant reports being born and raised in San Diego. His ethnic heritage is African and native American. He identifies his religion as Christian. He says that home was in Hillcrest with his wife, in a rented one bedroom apartment, but his wife is now filing for divorce. He says that He does have a driver's license and used to have a bank account, but not anymore. He states that he was never a member of a gang.

8.15   Relationships:

He reports that his first marriage lasted about 12 years, from 1980-1992. There is a daughter from this marriage. His current marriage lasted about a year, from 1997 until recently in the summer of 1998. There are no children from this marriage and it is about to end in divorce. Apart from above relationships, he says that he has friends.

8.16   Health History:

The defendant reports that he has migraine headaches, and also complains of a right abdominal pain suggestive of an appendix problem.

8.17   Psychiatric History:



COPY

RE: JACKSON, JAMES                    -2-                    October 21, 1998

4.2   Is the patient able to understand the nature of the criminal proceedings?

4.3   Is the patient able to assist counsel in the conduct of the defense in a rational manner?

The court order also asked the evaluating psychiatrist to comment on "factors for specialized sentencing." I am not sure exactly what this means and in this evaluation, I give a mental competency to stand trial [penal code section 1368]. If the court wishes to have a pre-sentencing evaluation, please send the defendant back for a second appointment.

## 5.  DATA BASE:

5.1   I reviewed the DA file, but there were no medical or psychiatric records to review.

5.2   I also relied on my personal examination of the defendant.

## 6.  ETHICS:

6.1   Confidentiality:

Before starting evaluation, I explained to Mr Jackson, that although I was a doctor, I was not his treating doctor, he was not my patient, we did not have any doctor-patient relationship, and I would therefore not observe the usual confidentiality. In contrast, I explained that I was required to convey to the court all my medical findings.

6.2   Consent:

Having been thus informed, Mr. Jackson agreed to proceed.

6.3   Impartiality:

I am not aware of any bias that would prevent me from giving an impartial opinion.

## 7.  DEMOGRAPHICS:

7.1   Mr. Jackson is a 31-year-old man.

## 8.  DOES THE DEFENDANT SUFFER FROM A MENTAL DISORDER?:

8.1   History:

8.11   Family History:

The defendant reports that both his parents are alive and well and living in California. His mother





KENNETH E. MARTONE
Clerk of the Superior Court

OCT 27 1998

By: G. Cervantes, Deputy

# County of San Diego

**FORENSIC EVALUATION UNIT**
(619) 531-3047

**DEPARTMENT OF HEALTH SERVICES**
**MENTAL HEALTH SERVICES**

### FORENSIC PSYCHIATRIC EVALUATION
### REPORT ON MENTAL COMPETENCY

| | |
|---|---|
| **Name:** JACKSON, JAMES | **Court Date:** |
| **MR#:** | **Judge:** |
| **DOB/Sex:** 11/29/66-Male | **Examiner:** Ansar Haroun, M.D. |
| **Case:** SDC136393 | **Date of Evaluation:** 10/21/98 |

## FORENSIC PSYCHIATRIC EVALUATION

### REPORT ON MENTAL COMPETENCY

**1.   PATIENT:**

    1.1 Name:      Jackson, James
    1.2 Gender:    Male.
    1.3 DOB:       29 NOV 66

**2.   EVALUATION:**

    2.1 Date:      21 OCT 98
    2.2 Place:     County Court House Psychiatric Clinic.
    2.3 Type:      PC 1368
    2.4 Nature:    Confidential.
    2.5 Case ID:   Not Given.
        Case No:   SCD136383.
        DA No:     PA950901.
        Court Date: 12 NOV 98

**3.   REASON FOR REFERRAL:**

    On 15 APRIL 98, it was alleged that the defendant committed an
    assault with an intent to commit a felony and forced
    imprisonment by violence.

    On 06 OCT 98, Judge M.D. Wellington ordered a forensic
    psychiatrist to make a personal examination of the defendant.

    Today, 21 OCT 98, I examined the defendant and hereby file my
    report.

**5.   MEDICAL/LEGAL QUESTIONS:**

    4.1  Does the Defendant suffer from a mental disorder?

Exbit "B"

COPY

COPY

COURT OF APPEAL - FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

FILED

APR 1 1 2000

Stephen M. Kelly, Clerk

Court of Appeal Fourth District

In re JAMES JACKSON

on

Habeas Corpus.

D035252

(San Diego County
Super. Ct. No. SCD136393)

THE COURT:

The petition for writ of habeas corpus has been read and considered by Justices Work, Haller and McIntyre.

On February 18, 2000, this court denied a petition for writ of habeas corpus in which petitioner raised the issue raised here. (*In re Jackson* D034620.) This petition is in the nature of a petition for reconsideration. Under California Rules of Court, rule 24, subdivision (a), a summary denial of a petition within the original jurisdiction of this court becomes final immediately as to this court. This court is therefore without jurisdiction to reconsider its ruling. Petitioner must file an original proceeding in the California Supreme Court should he wish to have this matter considered further.

The petition is dismissed.

McINTYRE, Acting P.J.

Copies to:  All parties

**\*\*\* IMPORTANT NOTICE \*** COPY

THIS FINANCIAL STATEMENT AND YOUR REASONABLE DISCERNIBLE FUTURE FINANCIAL 0048
POSITION WILL BE USED TO DETERMINE YOUR ABILITY TO PAY A PORTION OR ALL OF THE
COSTS OF PROBATION AS REQUIRED UNDER SECTION 1203.1(b) OF THE PENAL CODE.

<u>READ EACH QUESTION CAREFULLY AND ANSWER EACH QUESTION COMPLETELY AND TRUTHFULLY</u>.

AT THE CONCLUSION OF THE COURT PROCEEDINGS, IF THE COURT DETERMINES THAT YOU HAVE
THE ABILITY TO PAY, THE COURT WILL ORDER YOU TO PAY ALL OR PART OF THE COSTS.
SUCH AN ORDER WILL HAVE THE SAME FORCE AND EFFECT AS A JUDGEMENT IN A CIVIL
ACTION AND WILL BE SUBJECT TO EXECUTION.

<u>NOTICE OF RIGHTS</u>

If it is determined that you have the present ability to repay probation costs,
and you disagree with the determination, <u>you have a RIGHT TO A HEARING before the
Court</u>. At a hearing you are entitled to, but not limited to, the following
rights:

1. THE RIGHT TO BE HEARD IN PERSON;
2. THE RIGHT TO PRESENT WITNESSES AND OTHER DOCUMENTARY EVIDENCE;
3. THE RIGHT TO CONFRONT AND CROSS-EXAMINE ADVERSE WITNESSES;
4. THE RIGHT TO THE DISCLOSURE OF EVIDENCE AGAINST YOU; and
5. THE RIGHT TO A WRITTEN FINDING OF THE COURT.

I authorize the Director, Department of Revenue and Recovery or his appointed
officer to contact my bank or any creditors regarding my accounts.

<u>I DECLARE UNDER PENALTY OF PERJURY THAT THIS IS A FULL AND TRUE STATEMENT OF MY
ASSETS AND OBLIGATIONS TO THE BEST OF MY KNOWLEDGE.   I ALSO HAVE RECEIVED, READ
AND UNDERSTAND MY RIGHTS TO A FINANCIAL HEARING AS IT PERTAINS TO PENAL CODE
SECTION 1203.1(b)</u>.

Signature _James Ankron_ Date _Oct 13, 1998_

The information on this form was provided by the defendant during a
teleconference interview on _____ and the defendant was
notified of his /her rights regarding this financial statement.

_____
                                                  Probation Officer

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

RECOMMENDATION

Financial Evaluation by: _A. D. Scale_ Dept. _PROB_

Having reviewed the financial statement on the reverse side in relation to
probation costs, Penal Code Section 1203.1(b), it is recommended the Court find
the defendant:

        X  has ability to repay probation costs.
           has no ability to repay probation costs.

**PROB. FORM 0016 (Rev. 7/96)**

FINANCIAL ~~STATEMENT~~ COPY

DATE 10-27-98

0047

CASE # A-000709255

**PLEASE PRINT**

NAME JACKSON, JAMES

ADDRESS 5432 CRESTON DR.

CITY SANDIEGO          STATE CA     ZIP 92114

SOC.SEC.# 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 BIRTHDATE 1-29-61 IMMIG #

VEHICLE LIC. # NONE     DRIV. LIC. # C3602066     STATE CA

CHILDREN/STEP-CHILDREN (names, d.o.b.s or ages) Franchesca JACKSON
AGE 11

### MONTHLY INCOME

EMPLOYER Rick Sears painting co.     PHONE # 457-3922

ADDRESS LAJOLLA     CITY LA JOLLA STATE CA

TAKE HOME PAY (circle one)/MO/BI WKLY $ $250 a week /WKLY     # DEPENDENTS

OTHER INCOME $ self employed painter     SOURCE House
month 1,000

BANK NAME_____ CHECKING $_____ SAVINGS $_____

ADDRESS_____ ACCOUNT #

TOTAL MONTHLY INCOME $ 1200

### MONTHLY EXPENSES

OWN HOME_____ RENT 750 PROPERTY_____ MONTHLY PAYMENT $_____

GAS & LIGHTS $____ WATER $_____ PHONE $____ CABLE TV $_____

FOOD $ 100 DAY CARE $____ AUTO PAYMENT $____ AUTO GAS $ 60 month

AUTO INSURANCE $ 50 MEDICAL INSURANCE $____ MISC. _____

OTHER BILLS/DEBTS     BALANCE          MO. PAYMENT

Viking insurance     $          $ 50 month

_____     $          $

_____     $          $

_____     $          $

_____     $          $

TOTAL MONTHLY EXPENSES $ 400

NEAREST LIVING RELATIVE OUTSIDE YOUR HOME:

NAME GRANDMA VAN     ORETHA VAN WILSON   PHONE # (562) 437-4984

ADDRESS 1450 EAST 65t.     CITY Long Beach STATE CA

SAN DIEGO COUNTY PROBATION DEPARTMENT   0049

KENNETH E. MARTONE
Clerk of the Superior Court

NOV 2 5 1998

ADULT SERVICES SUPPLEMENTAL REPORT

| THE PEOPLE OF THE STATE OF CALIFORNIA | COURT NO. SCD-136393 | DEPT & JUDGE SDSC 8 WELLINGTON |
|---|---|---|
| v. | DA FILE NO. PA950901 | ATTORNEY – PD Knight, S. |
| RN: JACKSON, JAMES MORRIS | | |
| CN: JACKSON, JAMES | HEARING DATE/TIME 12/03/98 01:30PM | PROB. CASE NO. A-000709255 |
| AKA: | PROBATION OFFICER ECCLES, K. | PO TEL. NO. (619)441-3454 |

**REASON FOR HEARING:**

This is a Probation Hearing and Sentencing, having been continued from the prior PH&S.

**PRESENT SITUATION:**

In the original Probation Officer's Report dated 11-12-98, the undersigned questioned whether the five-year enhancement per PC667(a)(1) could be imposed.  The concern arose out a thorough but literal reading of PC667, PC1192.7, and PC1192.8.  The Court instructed the Probation Officer to reconsider that issue for today's hearing.

The undersigned has been made aware of People v. Martinez 171 Cal.App.3d 727, which holds that the PC220 offenses necessarily include attempts of the intended offenses.  Penal Code section 1192.7(c)(27) lists attempted PC288a as a serious felony for imposing the PC667(a)(1) enhancement.  The Probation Officer does now believe that the five-year enhancement must be imposed.

**VICTIMS:**

RESTITUTION: Unknown

VICTIM NOTIFIED OF P&S HEARING: Yes          INTENDS TO APPEAR: Unknown

SOURCES OF INFORMATION for this section

The undersigned has still not been able to contact Trina Dykes.  As additional information becomes available, it will be forwarded to the Court.

Jackson, James Morris                    2                              12-3-98
SCD136393



0050

## EVALUATION:

Before the Court for sentencing is 31-year-old James Morris Jackson, having pled guilty to one felony count of assault with intent to commit a felony. In this matter, Mr. Jackson picked up a street prostitute and, after negotiating an act of prostitution, attempted to force the victim to perform oral copulation without the promised compensation and against the victim's consent.  During this assault, the defendant punched the victim in the face several times, causing superficial cuts to the victim's nose and mouth.  The police reports indicate that the victim may have suffered a broken nose, but no medical records or other information was available to the undersigned to substantiate that additional injury.  The victim escaped the assault when she was able to fight her way out of the defendant's car. She got the license plate number of the defendant's car and reported the incident to the police.

This supplemental report is submitted to correct the prison term analysis contained in the Probation Officer's Report of 11-12-98.  The Probation Officer otherwise adopts the previous discussion of mitigants and aggravants and term selection.

The defendant is statutorily ineligible for a grant of probation pursuant to PC667(c)(2).  Aside from this basic ineligibility, a grant of probation would clearly burden the community with an unacceptable risk that the defendant with assault other women.  His performance on parole appears to have been very poor.  The Probation Officer believes that the nature, focus, and extent of the defendant's conduct toward women is serious and troubling.  A Department of Corrections commitment is clearly the appropriate disposition of this matter.

## CUSTODY DATA:

| Date Confined | Date Released | Place | Custody Days |
|---|---|---|---|
| 4/16/98 | 12/3/98 | CJ | 232 |
| | (in custody) | PC4019 CREDITS | 116 |
| | | Tot. CTS | 348 |

Jackson, James Morris                    3
SCD136393



## RECOMMENDATION:

That probation be denied and the defendant be committed to the Department
of Corrections for the term of twelve years, with credit for time served of
232 actual days and 116 days PC4019 credits, a total of 348 days credit;
further, pay a restitution fine of $3,400 pursuant to PC1202.4(b), said
fine to be paid forthwith or as provided in 2085.5 PC, and pay an
additional fine of $3,400 pursuant to PC1202.45, said fine to be stayed
pending successful completion of parole.

### Term Recommendation Breakdown by Count is as Follows:

| Crime | Suggested Prison Term | Recommended Term | Recommended Stay |
|-------|----------------------|------------------|------------------|
| Count One, PC220 | Upper--Twelve years | 12 years | 0 |
| PC667(a)(1) prior in CR111867 | Five years | 5 years (consec.) | 0 |
| | Total term: | 17 years | |

Respectfully submitted,

ALAN M. CROGAN
CHIEF PROBATION OFFICER

By: *Kevin D. Eccles*

KEVIN D. ECCLES
DEPUTY PROBATION OFFICER
(619)441-3454

Approved *Ronald R. Hudson*
        RONALD R. HUDSON, SUPERVISOR

I have read and considered the foregoing report.

_____
JUDGE OF THE SUPERIOR COURT

KDE:kde:tc:111798
PROB. 2186 (6-19-91)

Jackson, James Morris                **COPY**                11-12-98
SCD136393                                                    0037

Investigators checked the license plate number provided by the victim. The number matched the description of the car the assailant had driven. The plate belonged to a car registered to the defendant's wife. The investigators learned that the defendant fit the description provided by the victim, and that he was required to register under PC290 for a prior, similar sex offense conviction. They prepared a photographic lineup and showed it to Ms. Dykes. She tentatively identified the defendant in the lineup as the assailant.

The investigators found the defendant's parked car on the morning of 4-16-98. They watched the car and contacted the defendant as he left a residence nearby a short time later. They arrested the defendant and took him to police headquarters for questioning. When interviewed, he told the investigators that he had made eye contact with the victim as he drove by, and she waved for him to stop. He stopped and they negotiated an act of prostitution. The defendant parked in an alleyway. At that time, the victim "started acting crazy." The defendant felt the victim was under the influence of drugs. They started arguing, and the victim grabbed him by the hair. They struggled, and the defendant acknowledged that he may have struck her. He pushed her out of the car and drove away. The defendant was booked in the county jail.

On 4-17-98, investigators interviewed Ms. Dykes again. She admitted that she and the defendant had negotiated and agreed upon an act of prostitution before the defendant parked in the alley. After they parked, the defendant locked all the car doors using the power lock switch on the driver's door. Ms. Dykes thought something was wrong. When she looked back at the defendant, he had already exposed his penis. Ms. Dykes asked the defendant, "Where's my twenty bucks?" The defendant grabbed her by the hair and forced her head down toward his penis telling her, "Here's your twenty bucks." He hit her in the face several times, then covered her mouth so that she could not scream for help. She bit his hand and was ultimately able to get out of the car and get the license plate number.

**VICTIMS:**

---

RESTITUTION: Unknown

VICTIM NOTIFIED OF P&S HEARING: Yes        INTENDS TO APPEAR: Unknown

SOURCES OF INFORMATION for this section

---

On 10-19-98, a letter was sent to Trina Dykes informing her of the date, time, and place of this hearing, as well as certain victims' rights.

To date, there has been no response from the victim. The undersigned has attempted to contact her at her last known telephone number, without success. The undersigned attempted to contact Ms. Dykes at her last known telephone number and learned that the victim was not living at that address, but was using the number as a message phone. The undersigned did not obtain additional information on how to reach Ms. Dykes, and left a message for the victim to return the undersigned's call. As of the submission deadline of this report, Ms. Dykes had not returned the call. As additional information becomes available, it will be forwarded to the Court.


## DEFENDANT'S STATEMENT:

SOURCES OF INFORMATION for this section

PROBATION OFFICER'S INTERVIEW WITH DEFENDANT, 10-27-98

The defendant submitted the following written statement in his probation questionnaire:

> "To Probation Officer Eccles K. I do regrent picking up a prostutite in April 15, 1998 on El Cajon Blvd. I wish I would never let this woman in my car. It is wrong exchange money for sex. As God as my witness I will never pick up another prostutite. Because it's nothing but trouble. And I need to keep going to AA meetings. And it is wrong for any man to put their hands on another woman, no matter what."

On 10-27-98, the defendant was interviewed at the George Bailey Detention Facility. In discussing the instant offense, Mr. Jackson stated that the victim already had bruises on her face when he picked her up. They negotiated for an act of prostitution. After he parked his car in the alley, however, the victim became agitated, and the defendant became certain that she was "tweaking." He told the victim to get out of his car, but she refused and demanded the money he had offered her. Mr. Jackson tried to push her out of the car, but she resisted and they struggled. During the struggle, the victim bit him. He does not remember purposefully hitting her. He denied having sex with the victim, or attempting to force her to orally copulate him. He feels that he is only guilty of soliciting the act of prostitution. He told the undersigned, "Sir, if I had given her the twenty dollars, I wouldn't be talking to you now."

The undersigned discussed the consequences of the strike prior on the sentencing options. The defendant replied that he is considering a motion to withdraw his plea. He will discuss that option with his attorney. He had hoped for a grant of probation, but hopes that he will be allowed to go to a state hospital rather than state prison if probation is not an option.

Jackson, James Morris                5                          11-12-98
SCD136393
                                                                   0039

## CRIMINAL HISTORY:

SOURCES OF INFORMATION for this section     COPY

CII (print verified) dated 10-12-98; FBI dated 10-12-98; CRT check of local
law enforcement run 10-23-98; DA file

| Date | Agency | Charge | Disposition |
|------|--------|--------|-------------|
| 2-26-90 | SDPD | PC664/187(a); PC288a(c); PC236/237; PC245(a)(1); PC211 | CR111867: PG-F-PB, PC288a© and PC245(a)(1), 6-28-90; 7-26-90, 3 yrs state prison; 11-20-91, paroled. |

In this matter, the defendant contacted a street prostitute on 21st Street.
After a short conversation, they negotiated an act of prostitution.  The
victim got into the defendant's vehicle.  She directed the defendant to a
place where she could perform the sex act.  The defendant told the victim
he knew a better place and drove her to a parking lot near the Municipal
Golf Course in the Golden Hill area.

The defendant then told the victim to get into the rear of the pickup
truck, which had a camper shell.  After they were in the rear of the truck,
the victim asked the defendant for money.  The defendant leaned forward
over her as if to kiss her on the neck and at the same time handed her a
handful of crumpled bills.  When she learned that it was only $4, she
protested and started to push him away.  He pushed back saying, "You gonna
give me head, you're gonna give me head."  She replied that she was not
going to and started to push him away.  The defendant held her down and
would not let her leave.  The victim continued to fight but he held her
down and choked her, causing her to lose consciousness for an unspecified
period of time.  While the victim was unconscious, the defendant went
through the victim's pockets and took several small items including a
cigarette lighter, a book of matches, and a tube of lip ointment.  These
items were later recovered in a parking lot where the defendant was seen by
witnesses to have discarded them.

When the victim regained consciousness, her nose was bleeding and her body
was shaking uncontrollably.  She also realized that she had lost control of
her bladder had urinated into her underwear.  When the defendant sat back,
the victim noticed that the defendant's erect penis was exposed.  When she
sat up, he grabbed her by the shoulders and pulled her toward his penis and
forced her to orally copulate him, which she did.  During his act, he held
her by the back of the head.  He ejaculated into her mouth within
approximately two minutes.  After the victim completed the oral copulation
the defendant told her, "I don't know why I do this to women.  I need a
doctor.  I need help."  He also took a rag that was in the back of the
truck and attempted to wipe blood from her face.  Both of them then exited
the rear of the truck and entered the cab of the truck after which the
defendant drove the victim to the area of 25th and "B" Streets where he let

COPY

Jackson, James Morris                          6                                    11-12-98  0040
SCD136393

her out of his vehicle. After exiting the vehicle, The victim flagged down
a vehicle and asked the driver to write down the license number of the
defendant's truck. The driver did this, then drove the victim to a nearby
fire station, where they reported the incident.

| Date | Agency | Charge | Disposition |
|---|---|---|---|
| 2-1-92 | SDPD | PC594(a)(b)(4) | M641563: 3-5-92, complaint filed; 4-3-92, deft FTA/aff reqtd; 4-14-92, aff. filed/deft FTA/wt ord; 4-16-92, wt iss; 7-10-92, dismissed/deft incarcerated. |
| 2-21-92 | CASD Corrections | Parole Violation | To finish term. |
| 6-2-93 | CASD Corrections | Parole Violation | To finish term. |
| 1-10-94 | CASD Corrections | Parole Violation | To finish term. |
| 10-16-95 | CASD Corrections | Parole Violation | To finish term. |
| 12-22-95 | SDSO | PC273.6(a) | C169139: PG-M, PC273.6(a), 2-29-96, 3 yrs s prob, $235 fine (deferred); 4-29-96, no compliance/prob rev/wt ord; 11-20-97, prob reinst. |
| 9-3-97 | SDPD | PC273.5(a) per PC17(b)(4); PC136.1(b)(1); PC236.237 per PC17(b)(4) | M744628DV: PG-M-PB, PC273.5(a), 9-10-97, 3 yrs s prob, $200 fine, DVRP, 25 dys PSP; 6-23-98, no compliance/prob rev/wt ord; 6-29-98, prob rev/wt iss; 9-9-98, prob rev/reinst/mod; 10-9-98, prob remains rev; 12-11-98, further proc. set SDMDV1. |
| 4-15-98 | SDPD | PC220/288a; PC236/237 | SCD136393: INSTANT OFFENSE. |

Jackson, James Morris        COPY              11-12-98   0041
SCD136393

**Additional Information:** The following police report information which did not result in a conviction is being offered for the Court's information pursuant to California Rules of Court 411.5(a)(3):

According to SDPD Arrest Report 95-165694: On 9-21-95, vice detectives were working an undercover prostitution sting on University Avenue in San Diego. The defendant contacted an undercover female police officer as she was standing in the 4600 block of University Avenue. He offered the officer $20 for oral sex. He agreed to meet the officer behind a nearby adult theater. Once there, he was arrested by other officers. At the time of his arrest, the defendant had only four dollars in his possession. He was found to be on parole in CR111867 at the time, and was booked into county jail.

* * *

According to SDPD Crime/Incident Report #98-074378 and SDSO Officer's Report #98078: On 10-22-98, the defendant's estranged wife, Beatrice Silva, reported to the police that the defendant was contacting her from the jail, in violation of a valid restraining order. She indicated that the defendant had sent two letters to her, one to her home and one to her place of employment. Both letters contained apologies but no threats. The defendant had also attempted to contact Ms. Silva by telephone at work one day in October, but she had not been there at the time. Ms. Silva added that she did not want the defendant to contact her in any manner. Correctional staff at the jail subsequently contacted the defendant and confronted him about the apparent violations of the restraining order. The defendant agreed to stop doing so.

**PROBATION/PAROLE ADJUSTMENT/ADDITIONAL INFORMATION:**

Available records indicate the defendant has not been formally supervised under a previous grant of probation.

The defendant rap sheet does indicate, however, that the defendant suffered four separate violations of parole in case CR111867 which resulted in returns to custody. The parole records are not available to elaborate upon the nature of the violations.

**PERSONAL DATA:**

The following information was offered by the defendant. Unless noted otherwise it has not been verified.

**Significant Family Information and Living Arrangements:**
The defendant was born and raised in San Diego, besides living in Los Angeles for one year when he was thirteen. His parents recently moved to Long Beach. He has three sisters. Two sisters live in the San Diego area. The other sister now lives in Long Beach.

The defendant plans to live with his parents, at least temporarily, when he is released from custody.

Jackson, James Morris        8              11-12-98        0042
SCD136393

**Family Criminal History:**
None reported.

**Education:**
The defendant left school after the eleventh grade and went to work.  He
had math and reading problems in school.  He had subsequently worked on his
GED, but has not passed the test.

**Military History and Status:**
None.

**Employment History:**
The defendant was working as a house painter at the time of his arrest.  He
had been working for Dan Cross Painting in Santee since January of this
year.  He had worked as a painter, in addition to odd jobs as a general
laborer, over the last twenty years.

**Financial Information:**
The defendant has been unemployed since his arrest in this case.  He
currently has no income or significant assets.

**Marital Status:**
The defendant was married to Jackie Estrella from 1986 through 1992.  He
was married to Beatrice Silva from 1997 though this year.  The divorce has
recently become final.  The defendant stated that both of his marriages
were ruined due to his drinking.  In his second marriage, he had also
assaulted his wife on one occasion when he was intoxicated.

**Number of Dependents & Ages/Relationship to Defendant:**
The defendant has one daughter, aged eleven, living with the defendant's
first wife in El Cajon.

**Psychological/Medical Problems:**
The defendant has some residual back problems related to a work-related
injury several years ago.  The defendant has been taking Mellaril since
1993.  The medication treats his depression and "mellows me out."  He has
also taken Haldol and Thorazine in the past to control depression, anger,
nightmares, and auditory hallucinations.  The defendant was seeing a
psychiatrist, Dr. Milton, at a clinic on Adams Avenue at the time of his
arrest.

**Substance Abuse and Treatment History:**

Drugs:              The defendant has used marijuana since he was seventeen.
                    He smoked fairly heavily on an ongoing basis, but stopped
                    using it in April of 1997 due to his relationship with his
                    second wife.  He admitted that he "had a joint now and
                    then" after that.

                    The defendant began using cocaine base in 1992.  He used
                    the drug "off and on" since 1992.  He last used the drug
                    the day before his arrest.  He added that he typically used
                    the drug in conjunction with his association with
                    prostitutes.

Jackson, James Morris                9                        11-12-98
SCD136393

COPY

0043

Alcohol:            The defendant admitted the heavy, ongoing use of alcohol
                    since he was seventeen years old.  His drinking ruined both
                    marriages.  He drank heavily during the course of his
                    parole in his prior felony case.

Treatment:          The defendant attended four or five AA meetings in
                    conjunction to his current misdemeanor DV probation before
                    his current arrest.  He attended a few NA meetings in the
                    past on his own volition.  He also spent four months at CRC
                    in conjunction with one of his parole violations.  He does
                    feel he needs some substance abuse treatment, but did not
                    have a specific plan for such treatment.

**Gang Affiliation:**
None reported or documented.

**Future Plans:**
The defendant plans to live with his parents temporarily when released.  He
will find steady employment and avoid alcohol, drugs, and prostitutes.

**COLLATERAL INFORMATION:**

SOURCES OF INFORMATION for this section

The Court ordered a psychiatric evaluation of the defendant by the Forensic
Evaluation.  The undersigned has received, read, and considered the Report
on Mental Competency Report, dated 10-21-98, by Ansar Haroun, M.D.  As the
Court has also received Dr. Haroun's report, and because the report is of a
confidential nature, it will not be summarized herein.

**SENTENCING DATA:**

**Possible Circumstances in Mitigation:**

None found.

**Possible Circumstances in Aggravation:**

Rule 421(b)(1) The defendant has engaged in violent which indicates a
serious danger to society.  His entire criminal history consists of
assaultive crimes toward various women.

Rule 421(b)(2) The defendant's prior convictions as an adult or sustained
petitions in juvenile delinquency proceedings are numerous or of increasing
seriousness.  He has prior misdemeanor convictions for vandalism, corporal
injury to a spouse, and restraining order violations.

COPY

Rule 421(b)(3) The defendant has served a prior prison term in CR111867.

Rule 421(b)(5) The defendant's prior performance on parole in relation to case CR111867 was unsatisfactory, resulting in four separate returns to custody for violations.

Rule 408(a) Although the defendant pled guilty to one felony count of PC220, he was originally charged with an additional felony count of PC236/237, indicating a more serious course of criminal conduct on the part of the defendant.  It was charged that the defendant restrained the victim in his car during the assault.

Prison Term Analysis:
The possible sentencing choices for PC220 are doubled to four years, eight years, or twelve years due to the requirements of PC667(b)-(I).  The undersigned has reviewed the possible circumstances in mitigation and aggravation and believes the circumstances in aggravation, particularly the nature and extent of the defendant's assaultive conduct toward women and his uniformly poor response to parole supervision, are of sufficient substantive weight to warrant a deviation from the prescribed middle term.  The upper term of twelve years will be recommended should the Court wish to impose a prison commitment in this matter.

One PC667(a)(1) (Serious Felony Prior) allegation was found true in relation to CR111867.  This enhancement mandates a separate and consecutive five year prison term for each prior in addition to any other term imposed.  The undersigned has read Penal Code sections 667(a), 1192.7, and 1192.8, and believes that the instant offense is not among those listed as a "serious felony" under PC1192.7 or PC1192.8.  The only "assault with intent" offenses classified as serious felonies involve robbery and rape.  It appears, therefore, that the five year enhancement under PC667(a)(1) cannot be imposed.

EVALUATION:

Eligibility For Probation:

Rule 413(a):  The defendant appear absolutely ineligible for a grant of probation in this matter pursuant to PC667(c)(2).  A discussion of possible probation suitability factors will, therefore, be omitted.

COPY

Jackson, James Morris                                    11-12-98
SCD136393

## Discussion:

Before the Court for sentencing is 31-year-old James Morris Jackson, having
pled guilty to one felony count of assault with intent to commit a felony.
In this matter, Mr. Jackson picked up a street prostitute and, after
negotiating an act of prostitution, attempted to force the victim to
perform oral compensation without the promised compensation and against the
victim's consent. During this assault, the defendant punched the victim in
the face several times, causing superficial cuts to the victim's nose and
mouth. The police reports indicate that the victim may have suffered a
broken nose, but no medical records or other information was available to
the undersigned to substantiate that additional injury. The victim escaped
the assault when she was able to fight her way out of the defendant's car.
She got the license plate number of the defendant's car and reported the
incident to the police.

The defendant is statutorily ineligible for a grant of probation pursuant
to PC667(c)(2). Aside from this basic ineligibility, a grant of probation
would clearly burden the community with an unacceptable risk that the
defendant with assault other women. His performance on parole appears to
have been very poor. The Probation Officer believes that the nature,
focus, and extent of the defendant's conduct toward women is serious and
troubling. A Department of Corrections commitment is clearly the
appropriate disposition of this matter.

## CUSTODY DATA:

| Date Confined | Date Released | Place | Custody Days | |
|---|---|---|---|---|
| 4/16/98 | 11/12/98 | CJ | 237 | 211 |
| | (in custody) | PC4019 CREDITS | 168 | 104 |
| | | Tot. CTS | 355 | 315 |

## RECOMMENDATION:

That probation be denied and the defendant be committed to the Department
of Corrections for the term of twelve years, with credit for time served of
211 actual days and 104 days PC4019 credits, a total of 315 days credit;
further, pay a restitution fine of $2,400 pursuant to PC1202.4(b), said
fine to be paid forthwith or as provided in 2085.5 PC, and pay an
additional fine of $2,400 pursuant to PC1202.45, said fine to be stayed
pending successful completion of parole.

Jackson, James Morris   11-12-98  0045
SCD136393

### Term Recommendation Breakdown by Count is as Follows:

| Crime | Suggested Prison Term | Recommended Term | Recommended Stay |
|-------|----------------------|------------------|------------------|
| Count One, PC220 | Upper--Twelve years | 12 years | 0 |
| PC667(a)(1) prior in CR111867 | Five years | 0 | 5 years per PC667(a)(1) |
| | Total term: | 12 years | |

Respectfully submitted,

ALAN M. CROGAN
CHIEF PROBATION OFFICER

By: KEVIN D. ECCLES
DEPUTY PROBATION OFFICER
(619)441-3454

Approved _____
RONALD R. HUDSON, SUPERVISOR

I have read and considered the foregoing report.

_____
JUDGE OF THE SUPERIOR COURT

KDE:kde:tc:102998
PROB. 2185 (6-19-91)

# ABSTRACT OF JUDGMENT – PRISON COMMITMENT
## SINGLE OR CONCURRENT COUNT FORM
(Not to be used for Multiple Count Convictions nor Consecutive Sentences)

FORM DSL 290.1

0052

☒ SUPERIOR
☐ MUNICIPAL
☐ JUSTICE
} COURT OF CALIFORNIA, COUNTY OF __SAN DIEGO__

COURT (I.D.)
S,3,7,0,0,0

BRANCH OR JUDICIAL DISTRICT: _____

F I L E D
KENNETH E. MARTONE
Clerk of the Superior Court

DEC 0 9 1998

By: K. SOTO, Deputy

PEOPLE OF THE STATE OF CALIFORNIA versus
DEFENDANT: JAMES MORRIS JACKSON
AKA:

☒☒ PRESENT
☐ NOT PRESENT

SCD136393

COMMITMENT TO STATE PRISON
ABSTRACT OF JUDGMENT

AMENDED
ABSTRACT ☐

| DATE OF HEARING (MO) (DAY) (YR) | DEPT. NO | JUDGE | CLERK |
|---|---|---|---|
| 12-08-98 | 9 | MICHAEL D. WELLINGTON | K. SOTO |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| P. WHITELAW | ALBERT BARRET | STEPHEN KNIGHT | A-000709255 |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONY (OR ALTERNATE FELONY/MISDEMEANOR):

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | CONVICTED BY JURY TRIAL | COURT TRIAL | PLEA | TERM (L&U) | TIME IMPOSED YEARS | MONTHS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 220 | ASSAULT W/ FELONY INTENT | 98 | 10 | 06 | 98 | | | X | U | 6 | 0 |

2. ENHANCEMENTS charged and found true TIED TO SPECIFIC COUNTS (mainly in the § 12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.,
For each count list enhancements horizontally. Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385.
Add up time for enhancements on each line and enter line total in right-hand column.

| Count | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

3. ENHANCEMENTS charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly in § 667-series) and OTHER.
List all enhancements based on prior convictions or prior prison terms charged and found true. If 2 or more under the same section, repeat it for each enhancement (e.g., 2 non-violent prior prison terms under § 667.5(b) list § 667.5(b) 2 times). Enter time imposed for each or "S" for stayed or stricken. DO NOT LIST enhancements charged but not found true or stricken under § 1385. Add time for these enhancements and enter total in right-hand column. Also enter here any other enhancement not provided for in space 2.

| Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Enhancement | Yrs or "S" | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| PC667(a) | 5 | PC667(e)1 | 1 | | | | | | | 6 |

4. OTHER ORDERS:

5. TIME STAYED § 1170.1(g) (DOUBLE BASE LIMIT)

6. TOTAL TERM IMPOSED:  **12**

7. ☐ THIS SENTENCE IS TO RUN CONCURRENT WITH ANY PRIOR UNCOMPLETED SENTENCE(S):

8. EXECUTION OF SENTENCE IMPOSED:
A. ☒ AT INITIAL SENTENCING HEARING
B. ☐ AT RESENTENCING PURSUANT TO DECISION ON APPEAL
C. ☐ AFTER REVOCATION OF PROBATION
D. ☐ AT RESENTENCING PURSUANT TO RECALL OF COMMITMENT (PC § 1170(d))
E. ☐ OTHER

9. DATE OF SENTENCE PRONOUNCED (MO) (DAY) (YR)
12-08-98

CREDIT FOR TIME SPENT IN CUSTODY
TOTAL DAYS  355
INCLUDING:
ACTUAL LOCAL TIME  118
LOCAL CONDUCT CREDITS  237
STATE INSTITUTIONS
☐ DMH    ☐ CDC

10. DEFENDANT IS REMANDED TO THE CUSTODY OF THE SHERIFF, TO BE DELIVERED:
☒ FORTHWITH
☐ AFTER 48 HOURS, EXCLUDING SATURDAYS SUNDAYS AND HOLIDAYS

INTO THE CUSTODY OF THE DIRECTOR OF CORRECTIONS AT THE RECEPTION-GUIDANCE CENTER LOCATED AT:

☐ CALIF. INSTITUTION FOR WOMEN – FRONTERA
☐ CALIF. MEDICAL FACILITY – VACAVILLE
☐ SAN QUENTIN
☐ CALIF. INSTITUTION FOR MEN – CHINO
☐ DEUEL VOC. INST.

☒ OTHER (SPECIFY): R. J. DONOVAN CORRECTIONAL FACILITY

### CLERK OF THE COURT

I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

DEPUTY'S SIGNATURE
K. SOTO

DATE
DECEMBER 9, 1998

This form is prescribed under Penal Code § 1213.5 to satisfy the requirements of § 1213 for determinate sentences under Penal Code § 1170. Attachments may be used but must be referred to in this document.

## ABSTRACT OF JUDGMENT – COMMITMENT
### SINGLE OR CONCURRENT COUNT FORM
(Not to be used for Multiple Count Convictions nor Consecutive Sentences)
FORM DSL 290.1

Form Adopted by the
Judicial Council of California
Effective April 1, 1992

I, _James Jackson_____, am a resident of the Richard J. Donovan Correctional Facilty, in the County of San Diego, State of California. I am over the age of eighteen (18) years and am ~~n~~ a party to the above-entitled cause of action, which is a:

___Sentence Modification Pursuant to 1170(d)___

_____.

My state prison address is 480 Alta Rd., San Diego, California, 92179.

On ___May 14th_____, ~~1900~~ I served the foregoing on the parties named herein below by placing a true copy thereof, enclosed in a sealed envelope, with the postage theron fully paid, in the United States Mail in a Deposit box so provided at the prison facility, addressed as follows:

San Diego County Superior Court
Central division
220 W. Broadway
San Diego, CA 92101-3409

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

Executed this 14th day of ___May_____, ~~20~~ 00, at San Diego, California.

x _James Jackson_



COPY

1          COURT OF APPEAL OF THE STATE OF CALIFORNIA

2                  FOURTH APPELLATE DISTRICT

3                        DIVISION ONE

4

5                                        )
    THE PEOPLE OF THE STATE OF           )   FROM SAN DIEGO COUNTY
6    CALIFORNIA,                         )   HON. MICHAEL D.
                                         )        WELLINGTON, JUDGE
7                    PLAINTIFF AND       )
                     RESPONDENT,         )   COURT OF APPEAL
8         VS.                            )   NO. D032628
                                         )   CASE NO. SCD 136393
9    JAMES MORRIS JACKSON,               )
                                         )   CHANGE OF PLEA
10                   DEFENDANT AND        )
                     APPELLANT.          )
11                                        )

12

13                REPORTER'S APPEAL TRANSCRIPT

14                     OCTOBER 6, 1998

15                         VOLUME 1

16                       PAGES 1 TO 11

17   APPEARANCES:

18   FOR THE PLAINTIFF          BILL LOCKYER, ESQ.
     AND RESPONDENT:            ATTORNEY GENERAL
19                              STATE OF CALIFORNIA
                                110 WEST A STREET, SUITE 1100
20                              SAN DIEGO, CA  92101

21   FOR THE DEFENDANT          IN PROPRIA PERSONA
     AND APPELLANT:
22

23

24

25

26

27             JULIA KENDALL GILL, CSR 3524
                  OFFICIAL COURT REPORTER
28               SAN DIEGO SUPERIOR COURT

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF SAN DIEGO

3   DEPARTMENT 8        BEFORE HON. MICHAEL D. WELLINGTON, JUDGE

4

5   _____)

6   THE PEOPLE OF THE STATE OF CALIFORNIA,  )

7                          PLAINTIFF,    )

8              VS.                       )    NO. SCD 136393

9   JAMES MORRIS JACKSON,                )    CHANGE OF PLEA

10                         DEFENDANT.    )
    _____)

11

12                    REPORTER'S TRANSCRIPT

13                      OCTOBER 6, 1998

14

15

16  **APPEARANCES:**

17

18  FOR THE PLAINTIFF:        BY:  ALBERT BARRET, ESQ.
                              BY:  DANIEL LAMBORN, ESQ.
19                            DEPUTY DISTRICT ATTORNEYS

20
    FOR THE DEFENDANT:        BY:  STEPHEN KNIGHT, ESQ.
21                            RETAINED COUNSEL

22

23

24

25

26

27
                      JULIA K. GILL, CSR 3524
28                     OFFICIAL COURT REPORTER
                      SAN DIEGO SUPERIOR COURT

1    <u>SAN DIEGO, CALIFORNIA - TUESDAY - 10-6-98 - 12:05 P.M.</u>

2                          -OOO-

3    THE BAILIFF:  TRANSFER FROM DEPARTMENT NINE, CALENDAR

4  NUMBER NINE, JAMES JACKSON.

5    MR. BARRET:  AL BARRET FOR THE PEOPLE.

6    MR. KNIGHT:  STEPHEN KNIGHT ON BEHALF OF MR. JACKSON

7  WHO IS IN CUSTODY AND PRESENT.  THERE WILL BE A CHANGE OF

8  PLEA.

9    THE COURT:  OFF THE RECORD FOR A MOMENT.

10    (DISCUSSION OFF THE RECORD.)

11    THE COURT:  BACK ON THE RECORD NOW.

12    MR. JACKSON, WOULD YOU RAISE YOUR RIGHT HAND, PLEASE?

13    (WHEREUPON THE DEFENDANT WAS DULY SWORN.)

14    THE COURT:  ALL RIGHT.  WHAT'S YOUR COMPLETE NAME?

15    THE DEFENDANT:  JAMES M. JACKSON.

16    THE COURT:  HAVE YOU HAD ANY DRUGS OR ALCOHOL IN THE

17  LAST 24 HOURS?

18    THE DEFENDANT:  MELLARIL.

19    THE COURT:  AND WHEN DID YOU HAVE THE MELLARIL?

20    THE DEFENDANT:  LAST NIGHT.

21    THE COURT:  DOES THE MELLARIL MAKE IT MORE DIFFICULT

22  FOR YOU TO UNDERSTAND THE THINGS THAT YOUR ATTORNEY EXPLAINS

23  TO YOU?

24    THE DEFENDANT:  I UNDERSTAND, BUT --

25    THE COURT:  WELL, BUT WHAT I WAS ASKING IS:  DOES THE

26  MELLARIL MAKE IT HARD TO UNDERSTAND WHAT HE'S SAYING?

27    THE DEFENDANT:  I UNDERSTAND.

28    MR. KNIGHT:  YES OR NO?

1          THE COURT:  LISTEN TO MY QUESTION VERY CAREFULLY, SIR.

2    I'M ASKING YOU:  DOES THE MELLARIL MAKE IT HARDER FOR YOU TO

3    UNDERSTAND HIM?  DO YOU UNDERSTAND THE QUESTION?

4          THE DEFENDANT:  I UNDERSTAND.

5          THE COURT:  DO YOU UNDERSTAND THE QUESTION?

6          THE DEFENDANT:  YES, SIR.

7          THE COURT:  WILL YOU ANSWER THE QUESTION, PLEASE?

8          THE DEFENDANT:  YES, SIR.

9          THE COURT:  DOES THE MELLARIL MAKE IT HARDER FOR YOU

10   TO UNDERSTAND YOUR ATTORNEY?

11         THE DEFENDANT:  IT MELLOWS ME OUT.

12         THE COURT:  OKAY.  AND YOU'RE SATISFIED YOU DID

13   UNDERSTAND WHAT HE EXPLAINED TO YOU; IS THAT RIGHT?

14         THE DEFENDANT:  YES.

15         THE COURT:  OKAY.  I HAVE GOT A CHANGE OF PLEA FORM

16   HERE THAT HAS INITIALS IN BOXES ON BOTH SIDES OF THE FORM.

17   DID YOU PUT YOUR INITIALS IN THOSE BOXES?

18         THE DEFENDANT:  YEAH.

19         THE COURT:  DID YOU SIGN THE FORM HERE ON THE BACK

20   (INDICATING)?

21         THE DEFENDANT:  YEAH.

22         THE COURT:  DID YOU GO OVER THE WHOLE FORM WITH YOUR

23   LAWYER BEFORE YOU SIGNED IT?

24         THE DEFENDANT:  YEAH.

25         THE COURT:  AND DID YOU HAVE ENOUGH TIME TO TALK TO

26   HIM?

27         THE DEFENDANT:  YEAH.

28         THE COURT:  WHEN YOU SIGNED THE FORM DID YOU

1    UNDERSTAND EVERYTHING ON IT?

2         THE DEFENDANT:  YEAH.

3         THE COURT:  AND, SPECIFICALLY, DO YOU UNDERSTAND THAT

4    IF YOU PLEAD GUILTY TODAY YOU WILL BE GIVING UP YOUR RIGHT TO

5    A TRIAL BY A JURY, YOU'LL ALSO BE GIVING UP YOUR RIGHT TO

6    CONFRONT AND CROSS-EXAMINE THE WITNESSES AGAINST YOU, ALSO

7    YOUR RIGHT TO REMAIN SILENT, AND YOUR RIGHT TO PRESENT YOUR

8    OWN EVIDENCE IN COURT, AND YOUR RIGHT TO USE SUBPOENAS TO

9    ORDER YOUR WITNESSES TO COME INTO COURT?  DO YOU UNDERSTAND

10   YOU WILL BE GIVING THOSE RIGHTS UP?

11        THE DEFENDANT:  YEAH.  I -- I GUESS I CAN'T WIN, SO I

12   HAVE NO CHOICE.

13        THE COURT:  DO YOU UNDERSTAND YOU WILL BE GIVING THOSE

14   RIGHTS UP?

15        THE DEFENDANT:  YEAH.

16        THE COURT:  ARE YOU WILLING TO GIVE THOSE RIGHTS UP?

17        THE DEFENDANT:  YES.

18        THE COURT:  THE AGREEMENT BETWEEN YOU AND THE D.A. IS

19   THAT YOU ARE GOING TO PLEAD GUILTY TO COUNT ONE, ASSAULT WITH

20   INTENT TO COMMIT A FELONY.  YOU'RE ALSO GOING TO ADMIT THAT

21   YOU HAVE A SERIOUS FELONY PRIOR AS CHARGED, AND YOU'RE GOING

22   TO ADMIT THE STRIKE PRIOR.  THE DISTRICT ATTORNEY IS GOING TO

23   ASK ME TO DISMISS THE OTHER CHARGES AGAINST YOU, AND THERE IS

24   NO AGREEMENT AS TO HOW MUCH TIME YOU'RE GOING TO DO IN

25   CUSTODY.

26        THE DEFENDANT:  HE'S LIKE A FRIEND, YOU KNOW, TO ME.

27   I MEAN, YOU KNOW, HE LOVES TO DRINK COFFEE AND ALL THAT

28   STUFF, YOU KNOW.

1          THE COURT:  MR. JACKSON?

2          THE DEFENDANT:  YEAH.

3          THE COURT:  THE WAY I JUST DESCRIBED IT, IS THAT HOW

4    YOU UNDERSTAND THE DEAL?

5          THE DEFENDANT:  YEAH.

6          THE COURT:  IS THERE ANYTHING MORE TO THE AGREEMENT

7    OTHER THAN WHAT I JUST SAID?

8          THE DEFENDANT:  I UNDERSTAND.  YES, SIR.

9          THE COURT:  IS THERE ANYTHING MORE TO THE AGREEMENT

10   OTHER THAN WHAT I JUST SAID?

11         THE DEFENDANT:  NO.

12         THE COURT:  HAS ANYBODY MADE ANY THREATS TO YOU?

13         THE DEFENDANT:  NO.

14         THE COURT:  ANY PROMISES TO YOU OTHER THAN WHAT I'VE

15   SAID HERE?

16         THE DEFENDANT:  NO.

17         THE COURT:  OKAY.  COUNSEL, DO YOU BELIEVE YOUR CLIENT

18   UNDERSTANDS THE NATURE AND THE CONSEQUENCES OF THIS PLEA?

19         MR. KNIGHT:  YES.

20         THE COURT:  DO YOU JOIN HIM IN THE PLEA?

21         MR. KNIGHT:  YES.

22         THE COURT:  ALL RIGHT.  LET ME TAKE YOUR PLEA NOW,

23   SIR.

24         COUNT ONE CHARGES THAT ON OR ABOUT APRIL 15, 1998, YOU

25   WILLFULLY AND UNLAWFULLY ASSAULTED TRINA DYKES WITH THE

26   INTENT TO COMMIT ORAL COPULATION, IN VIOLATION OF PENAL CODE

27   SECTION 220.  DO YOU PLEAD GUILTY OR NOT GUILTY?

28         THE DEFENDANT:  GUILTY.

1          THE COURT:  THE FIRST SERIOUS FELONY PRIOR CHARGES

2    THAT ON OR ABOUT JUNE 28, 1990, IN THE SAN DIEGO SUPERIOR

3    COURT YOU WERE CONVICTED OF A SERIOUS FELONY, FORCIBLE ORAL

4    COPULATION, IN VIOLATION OF PENAL CODE SECTION 288(A)(C),

5    WHICH WAS SEPARATELY BROUGHT AND TRIED WITHIN THE MEANING OF

6    PENAL CODE SECTION 667(A)(1) AND 1192.7(C)(5).  DO YOU ADMIT

7    THAT, THAT YOU WERE CONVICTED OF THAT CHARGE?

8          THE DEFENDANT:  YEAH.

9          THE COURT:  AND THE STRIKE PRIOR CHARGES THAT ON OR

10   ABOUT JUNE 28, 1990, IN THE SAN DIEGO SUPERIOR COURT YOU WERE

11   CONVICTED OF FORCIBLE ORAL COPULATION IN VIOLATION OF PENAL

12   CODE SECTION 288(A)(C).  DO YOU ADMIT THAT?

13         THE DEFENDANT:  YEAH.

14         THE COURT:  PEOPLE SATISFIED?

15         MR. BARRET:  SATISFIED.

16         THE COURT:  MOTION ON THE REMAINING COUNTS AND

17   ALLEGATIONS?

18         MR. BARRET:  MOTION TO DISMISS COUNT TWO AND TO

19   DISMISS THE PRISON PRIOR ALLEGATION.

20         THE COURT:  THAT MOTION IS GRANTED.

21         CAN I HAVE A STIPULATION TO THE PRELIMINARY

22   EXAMINATION TRANSCRIPT AS A FACTUAL BASIS?

23         MR. KNIGHT:  YES, YOUR HONOR.  SO STIPULATE.

24         MR. BARRET:  SO STIPULATE.

25         THE COURT:  I FIND THERE IS A FACTUAL BASIS FOR THE

26   PLEA; AND I FIND THE PLEA HAS BEEN ENTERED KNOWINGLY,

27   INTELLIGENTLY AND VOLUNTARILY.

28         WHEN THIS WAS SENT HERE FROM DEPARTMENT NINE, MY

1   UNDERSTANDING IS THAT IT WAS CONTEMPLATED IT WOULD BE SENT

2   BACK TO NINE FOR SENTENCING; IS THAT CORRECT?

3        MR. KNIGHT:  NO, YOUR HONOR.

4        MR. BARRET:  THERE WAS NO CONTEMPLATION AS TO WHERE

5   THE CASE WOULD BE SENTENCED.  THE ONLY THING I WOULD REQUEST,

6   IF WE COULD WORK IT, IS THAT IT NOT BE ON THE 4TH.  I WILL BE

7   OUT OF THE COUNTRY UNTIL THE 12TH.

8        THE CLERK:  I DON'T KNOW WHICH COUNSEL INDICATED GOING

9   BACK TO NINE, SO --

10       THE COURT:  YOU WANT IT ON THE 12TH?

11       MR. BARRET:  IF WE COULD GET A TIME WAIVER.

12       THE COURT:  THAT'S NOVEMBER 12TH.

13       MR. KNIGHT, IS THAT SATISFACTORY?

14       MR. KNIGHT:  I -- AT THIS TIME IT IS, YES, YOUR HONOR.

15       THE COURT:  THAT'S "YES"?

16       MR. KNIGHT:  YES.

17       THE COURT:  MR. JACKSON, YOU'VE GOT A RIGHT TO HAVE

18  YOUR SENTENCING ON THE 4TH OF NOVEMBER.  ARE YOU WILLING TO

19  HAVE IT ON THE 12TH OF NOVEMBER INSTEAD?

20       THE DEFENDANT:  YEAH.

21       THE COURT:  WE WILL SET IT ON THAT DATE, 1:30 IN THE

22  AFTERNOON.

23       MR. KNIGHT:  FOR THE RECORD, YOUR HONOR, ALSO, I WOULD

24  LIKE TO REQUEST A PSYCHIATRIC EVALUATION, PRESENTENCE, OF THE

25  DEFENDANT.

26       THE COURT:  I WILL ORDER THAT.

27       THE CLERK:  IN FORENSICS OR --

28       THE COURT:  YES.

```
 1          MR. KNIGHT:  FORENSICS.

 2          THE COURT:  AND WHAT ISSUES DO YOU WANT ADDRESSED?

 3          MR. KNIGHT:  MENTAL DISORDER OF PRIOR HISTORY OF

 4   THE -- I JUST WAS --

 5          THE COURT:  OKAY.  IF THAT'S -- IF THAT'S WHAT YOU

 6   WANT, LET ME ASK YOU TO MAKE ARRANGEMENTS YOURSELF RATHER

 7   THAN THROUGH FORENSIC EVALUATION.

 8          MR. KNIGHT:  OKAY.  WHAT ARRANGEMENTS COULD I MAKE

 9   THROUGH FORENSIC EVALUATION?

10          THE COURT:  WELL, SOMETHING THAT WOULD ADDRESS A

11   SPECIFIC LEGAL ISSUE FOR ME TO CONSIDER.

12          MR. KNIGHT:  OKAY.

13          THE COURT:  YOU ARE APPOINTED THROUGH P.C.C., ARE YOU?

14          MR. KNIGHT:  NO, YOUR HONOR.

15          THE COURT:  YOU ARE RETAINED?

16          MR. KNIGHT:  YES, YOUR HONOR.

17          THE COURT:  I'M NOT HEARING ANY ISSUE AT THIS POINT

18   THAT I --

19          MR. KNIGHT:  THAT DEFENDANT MAY NOT BE -- MAY BE

20   MENTALLY DISORDERED SEX OFFENDER; THAT HE MAY NOT BE

21   COMPETENT TO --

22          THE COURT:  WELL, NOW, WAIT A SECOND.

23          MR. KNIGHT:  OKAY.  NO, YOUR HONOR.

24          THE COURT:  IF YOU HAVE A DOUBT SUFFICIENT TO RAISE

25   THE ISSUES UNDER 1368 I NEEDED TO HEAR IT BEFORE THE PLEA;

26   AND IF YOU HAVE GOT IT NOW, WE HAVE GOT TO GO BACK TO SQUARE

27   ONE.

28          MR. KNIGHT:  AT THIS TIME I DON'T HAVE A DOUBT OF THE
```

1    DEFENDANT'S ABILITY TO ENTER A PLEA.

2         THE COURT:  AND I'LL SAY FOR THE RECORD THAT I HAVE

3    HAD A DISCUSSION WITH THE DEFENDANT HERE IN COURT AND IT WAS

4    PART OF THE PLEA AND I HAVE DONE MY BEST TO TAKE HIS MEASURE,

5    AS SOMEONE CAN IN THIS CONTEXT, AND I'M NOT LEFT IN THE

6    POSITION WHERE I WOULD MAKE A FINDING UNDER 1368 AT THIS

7    POINT.

8         MR. KNIGHT:  THANK YOU, YOUR HONOR.

9         THE COURT:  LET'S JUST SET IT FOR THE 12TH, AND IF YOU

10   BELIEVE YOU WANT TO HAVE SOME ADDITIONAL EVALUATION ALONG

11   THOSE LINES I'LL INVITE YOU TO GET THAT EVALUATION ON YOUR

12   OWN.

13        MR. KNIGHT:  THANK YOU.

14        THE COURT:  ALL RIGHT.

15        (PROCEEDINGS CONCLUDED.)

16        THE COURT:  LET'S GO BACK ON THE RECORD IN THE JACKSON

17   CASE.  COUNSEL ARE PRESENT.  MR. JACKSON ISN'T.

18        MOMENTS AFTER MY LAST OBSERVATION THAT I HADN'T SEEN

19   ANYTHING THAT LED ME TO DOUBT HIS ABILITY TO COOPERATE WITH

20   COUNSEL, AS THE TIME CAME FOR HIM TO LEAVE THE COURTROOM HE

21   BECAME VIOLENT.  IT TOOK TWO BAILIFFS TO SUBDUE HIM.  HE

22   GRABBED A TABLE, BROUGHT IT TO THE GROUND, MADE A FINE MESS

23   OF MY COURTROOM, SCARED THE PAPERS RIGHT OUT OF MY REPORTER,

24   I THINK, AND HAD TO BE PHYSICALLY DRAGGED FROM THE COURTROOM.

25   HE APPEARED TO BE LIMP AS A SACK OF POTATOES AS HE WAS BEING

26   DRAGGED OUT.  AFTER HAVING RESISTED, HE JUST SORT OF DROPPED.

27   I DON'T KNOW WHETHER HE WAS CONSCIOUS OR UNCONSCIOUS WHEN

28   DRAGGED OUT, BUT DRAGGED OUT HE WAS.  I DIDN'T DETECT

1    ANYTHING THAT GAVE RISE TO IT.

2         LET ME ASK MY BAILIFF WHO IS CATCHING HIS BREATH HERE:

3    DID -- WERE THERE WORDS EXCHANGED THAT I MISSED BEFORE THAT

4    OUTBREAK, BOB?

5         THE BAILIFF:  HE WAS INSTRUCTED TO WALK IN THE

6    DIRECTION OF THE HOLDING TANK.  HIS CASE WAS OVER WITH.  HE

7    BALKED.  HE RESISTED.  HE MENTIONED TO ME IF HE DIDN'T GO IN

8    THAT DIRECTION WAS I GOING TO SHOOT HIM, AND I SAID, "OF

9    COURSE NOT.  LET'S KEEP WALKING."  HE RESISTED THE WALK,

10   TURNED TOWARDS ME, ASSUMED LIKE HE WAS TAKING A PUGILISTIC

11   STANCE.  MY PARTNER JUST PULLED HIM DOWN FROM BEHIND.

12        THE COURT:  SO I'M NOT AT ALL CLEAR WHETHER THAT

13   REALLY GIVES RISE TO A 1368 ISSUE BUT I THINK THAT IT WOULD

14   BE UNREASONABLE OF ME NOT TO HAVE HIM EVALUATED.  SO WHILE

15   I'M NOT GOING TO MAKE THE FINDINGS -- OR THE INITIAL FINDINGS

16   UNDER SECTION 1368 AT THIS POINT BECAUSE I DON'T KNOW WHAT

17   THAT WAS ALL ABOUT, IT WAS ODD ENOUGH, AND HIS BEHAVIOR

18   DURING THE PLEA WAS SUBDUED ENOUGH, THAT I THINK THAT I

19   SHOULD ORDER AN EVALUATION.

20        SO I'M GOING TO ORDER THAT HE BE EVALUATED BY THE

21   FORENSIC EVALUATION UNIT.  THE ISSUES I'D LIKE THEM TO

22   ADDRESS ARE, ONE, WHETHER THERE IS ANY CAUSE TO BELIEVE THAT

23   HE IS UNABLE TO MEANINGFULLY ASSIST IN THIS CASE UNDER

24   SECTION 1368 --

25        THE CLERK:  ASSIST COUNSEL; IS THAT CORRECT?

26        THE COURT:  YES.

27        -- BUT I AM NOT SUSPENDING THE PROCEEDINGS AT THIS

28   POINT.  I'M SIMPLY ASKING FOR AN EVALUATION IN THE LIGHT OF

1  HIS IN-COURT BEHAVIOR, TO ASSIST ME, OR THE COURT, IN MAKING

2  AN APPROPRIATE DETERMINATION IN THE FUTURE.  LET ME ALSO ASK

3  FORENSIC EVALUATION TO COMMENT IN THEIR REPORT ON ANY OTHER

4  FACTORS THAT MIGHT RELATE TO SPECIALIZED SENTENCING NEEDS OF

5  THE DEFENDANT.

6          MR. LAMBORN:  SO THE COURT IS SPECIFICALLY NOT

7  SUSPENDING ANY PROCEEDINGS?

8          THE COURT:  I AM NOT MAKING THE PRELIMINARY FINDINGS

9  UNDER SECTION 1368, THAT'S CORRECT; AND, AS A RESULT, I AM

10  NOT SUSPENDING PROCEEDINGS.  ALL I'VE GOT IS AN OUTBURST.  I

11  DON'T KNOW WHAT ABOUT.  IT HAD BEEN STRANGE ENOUGH THAT I

12  THINK THAT I OUGHT TO GET SOME FURTHER INPUT FROM SOMEONE WHO

13  IS QUALIFIED TO DO THAT.

14          THE REPORTER:  YOUR HONOR, IS MR. LAMBORN MAKING AN

15  APPEARANCE?

16          THE COURT:  YES, ACTING AS A FRIEND OF THE D.A.'S

17  OFFICE.

18          THE CLERK:  SO THE EXAM DATE WILL BE OCTOBER 21ST AT

19  8:00 A.M. IN ROOM 1003, AND HEARING ON 10-28-98 AT 9:00 A.M.

20  IN DEPARTMENT 20?

21          THE COURT:  NO, NO HEARING IN DEPARTMENT 20.

22          THE CLERK:  EXCUSE ME.

23          THE COURT:  ALL WE HAVE GOT IS EXAM DATE AND WE HAVE A

24  SENTENCING DATED, PERIOD.  THE EXAM DATE IS ENOUGH BEFORE THE

25  SENTENCING DATE, WE OUGHT TO HAVE A REPORT BEFORE THEN.  WE

26  CAN ALL LOOK AT IT AND DECIDE IF THERE IS ANYTHING MORE FOR

27  US TO DO.

28          MR. KNIGHT:  OKAY.  THANK YOU, YOUR HONOR.

1          THE COURT:  THANKS, COUNSEL.

2          (PROCEEDINGS CONCLUDED.)

3                              -OOO-

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
 1

 2

 3

 4

 5    STATE OF CALIFORNIA    )
                            )  SS:
 6    COUNTY OF SAN DIEGO    )

 7

 8

 9          I, JULIA KENDALL GILL, AN OFFICIAL REPORTER FOR THE

10    SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR THE

11    COUNTY OF SAN DIEGO, DO HEREBY CERTIFY:

12          THAT, AS SUCH REPORTER, I REPORTED THE PROCEEDINGS HAD

13    IN THE ABOVE-ENTITLED CAUSE, AND THAT THE FOREGOING

14    TRANSCRIPT, CONSISTING OF PAGES NUMBERED FROM 1 TO 11,

15    INCLUSIVE, IS A FULL, TRUE, AND CORRECT TRANSCRIPTION OF MY

16    SHORTHAND NOTES TAKEN DURING THE PROCEEDINGS HAD ON OCTOBER

17    6, 1998.

18          DATED AT SAN DIEGO, CALIFORNIA, JANUARY 20, 1999.

19

20

21

22                              _____
                                JULIA KENDALL GILL, CSR 3524
23

24

25

26

27

28
```

Jackson, James Morris                    3                          12-3-98
SCD136393

## RECOMMENDATION:

That probation be denied and the defendant be committed to the Department
of Corrections for the term of twelve years, with credit for time served of
232 actual days and 116 days PC4019 credits, a total of 348 days credit;
further, pay a restitution fine of $3,400 pursuant to PC1202.4(b), said
fine to be paid forthwith or as provided in 2085.5 PC, and pay an
additional fine of $3,400 pursuant to PC1202.45, said fine to be stayed
pending successful completion of parole.

### Term Recommendation Breakdown by Count is as Follows:

| Crime | Suggested Prison Term | Recommended Term | Recommended Stay |
|---|---|---|---|
| Count One, PC220 | Upper--Twelve years | 12 years | 0 |
| PC667(a)(1) prior in CR111867 | Five years | 5 years (consec.) | 0 |
| | Total term: | 17 years | |

Respectfully submitted,

ALAN M. CROGAN
CHIEF PROBATION OFFICER

By: *Keven D. Eccles*

KEVIN D. ECCLES
DEPUTY PROBATION OFFICER
(619)441-3454

Approved *Ronald R. Hudson*
RONALD R. HUDSON, SUPERVISOR

I have read and considered the foregoing report.

JUDGE OF THE SUPERIOR COURT

KDE:kde:tc:111798
PROB. 2186 (6-19-91)

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in 1989, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

James Morris Jackson

FILING FEE PAID
Yes ☐   No ☒
IFP MOTION FILED
Yes ☐   No ☐
CONSENT TO
Court ☐   Magistrate ☐

Kight, et al

AUG 13 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** Kern
**PLAINTIFF**
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

James Morris Jackson
PO Box 290066
Represa, CA 95671
P-23919

**ATTORNEYS (IF KNOWN)**

'08 CV 1484 H BLM

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
**(For Diversity Cases Only)    FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 42 U.S.C. 1983

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Electmant | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☒ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appelate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.r.c.p. 23
DEMAND $ _____
Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE _____   Docket Number _____

DATE   8/13/2008

SIGNATURE OF ATTORNEY OF RECORD

R. Melly